**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DELIA MCCOY-MCMAHON, | : | |
|     Plaintiff | : | |
| | : | |
|  v. | : | |
| | : | |
| J. CARLTON GODLOVE, II, BRIAN R. KELLY, PATRICK M. MCCOY, LEWIS J. MCCOY, JR., | : | CIVIL ACTION NO:  08-5989 |
| | : | |
| | : | Gardner, J. |
|     Defendants | : | |
| | : | *[filed electronically]* |
|  and | : | |
| | : | |
| SPOTTS, STEVENS & MCCOY, INC. | : | |
| Derivative Defendant | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS COMPLAINT**

**I.    INTRODUCTION**

Defendants J. Carlton Godlove, II, Brian R. Kelly, Lewis J. McCoy, Jr., and Patrick M. McCoy (the "Individual Defendants") and Derivative Defendant Spotts, Stevens & McCoy, Inc. ("SSM") move the Court to dismiss Plaintiff Delia McCoy-McMahon's Complaint with prejudice.  This action is little more than Plaintiff's attempt to escalate a family squabble into a federal case.  This attempt fails here, however, because (1) Plaintiff lacks standing to assert 12 of the 14 Counts in the Complaint (Counts I, II, III, IV, VII, VIII, IX, X, XI, XII, XIII, and XIV) because she is no longer a shareholder of SSM and was not one at the time she filed her Complaint and (2) Plaintiff has not and cannot alleged facts sufficient to state valid claims with respect to the remaining counts (Counts V and VI) because she has not alleged a breach of fiduciary duty by the majority shareholders with respect to the merger that removed her as a shareholder of SSM and has not alleged any material misrepresentations upon which she relied to her detriment with respect to the information she received in connection with that merger.

1

## II. FACTUAL BACKGROUND

### A. The Parties

SSM is a Pennsylvania corporation performing engineering and consulting services for government, education, healthcare, industrial, and commercial clients in Pennsylvania, across the United States and in the Caribbean. [www.ssmgroup.com/about.aspx]. SSM's principal place of business is located at 1047 North Park Road, Wyomissing, Pennsylvania 19610. [Complaint, ¶ 8].

Plaintiff is a *former* shareholder of SSM. [Complaint, ¶¶ 3, 20-22, 335, 446]. In 1993, she acquired 13,693 shares. [Complaint, ¶ 16]. She owned those 13,693 shares until October 24, 2008 (or almost a month before the Complaint was filed on November 25, 2008), when, through a statutory merger expressly authorized by the Pennsylvania Business Corporation Law, her shares were converted into a right to receive $11.03 per share. [Complaint, ¶¶ 19-20].

The Individual Defendants are the brothers (Patrick M. McCoy and Lewis J. McCoy, Jr.) and brothers-in-law (J. Carlton Godlove, II and Brian R. Kelly) of Plaintiff. [Complaint, ¶ 1]. Since 1997, the Individual Defendants have served as the executive officers and board of directors of SSM and have been responsible for more than doubling the book value of Plaintiff's SSM shares. [Complaint, ¶¶ 20, 68-155]

The Individual Defendants, together with their spouses, owned 89.06% of the shares of SSM prior to October 24, 2008. [Complaint, ¶¶ 1, 34]. Today, the Individual Defendants and their spouses own 100% of the stock of SSM. [Complaint, ¶ 335].

### B. The Statutory Merger Pursuant to Chapter 15 of the Business Corporation Law

As set forth in Exhibit U to the Complaint, Plaintiff was informed on October 27, 2008 that on October 24, 2008, SSM had completed a merger transaction with Wyomissing Holdings, Inc. ("WHI") (the "Merger"). [Complaint, Exh. U (the "Merger Packet")].

2

The Merger Packet explained that on October 17, 2008, WHI, a Pennsylvania Business Corporation, was formed by J. Carlton Godlove, II, Sarah A. Godlove, Brian R. Kelly, Kathleen L. Kelly, Lewis J. McCoy, Jr., Melissa McCoy, and Patrick M. McCoy for the purpose of holding all their shares of common stock of SSM. [Complaint, Exh. U]. Thus, on October 17, 2008, WHI became the owner of approximately 89.1% of the shares of SSM. [Complaint, Exh. U].

The Merger was completed in accordance with an agreement and plan of merger dated October 24, 2008 between SSM and WHI, and that Merger was approved by the boards of directors of each corporation. [Complaint, Exh. U]. Because WHI was the owner of more than 80% of the shares of SSM, the approval of the Merger by the shareholders of SSM was not required under Pennsylvania law. [15 Pa. C.S.A. § 1924].

As a direct result of the Merger, each share of SSM common stock outstanding immediately prior to the Merger was converted automatically into the right to receive $11.03 in cash, except for shares of SSM common stock as to which dissenters' rights were properly perfected. [Complaint, Exh. U]. Included with the Merger Packet was a valuation report prepared by McGrail, Merkel, Quinn & Associates, Certified Public Accountants ("MMQ") explaining how the $11.03 value per share was calculated. [Complaint, Exh. U]. The Merger Packet also included relevant portions of the Pennsylvania Business Corporation Law dealing with dissenters' rights and a Notice to Demand Payment. [Complaint, Exh. U].

On December 1, 2008, Plaintiff sent notice of her intent to dissent, and she demanded payment of her shares in the amount of $94.98 per share, or more than $1.1 million more than the value of her shares as calculated by SSM's valuation professional. Plaintiff is the

3

only former SSM shareholder to invoke dissenters' rights.  The remaining former shareholders have accepted payment in exchange for their shares in the amount of $11.03 per share.

Pursuant to 15 Pa. C.S.A. § 1579, on January 5, 2008, SSM filed an application in the Court of Common Pleas of Berks County for the determination of the fair values of Plaintiff's SSM shares (the "Appraisal Action").  The Appraisal Action is docketed at *In re: Application of Spotts, Stevens & McCoy, Inc.*, Berks County Court of Common Pleas, No. 09-44.

### C.  Plaintiff's Belated Derivative Claims

Despite Plaintiff's admission that she is no longer a shareholder of SSM and was not a shareholder at the time she filed the Complaint, 11 of the 14 Counts in the Complaint are asserted derivatively on behalf of SSM.  [Complaint, Counts I, II, III, IV, VII, VIII, IX, X, XI, XII, and XIII].  To support these derivative claims, Plaintiff asserts mostly conclusions of law rather than allegations of fact.  Indeed, her 145-page, 609-paragraph Complaint can be boiled down to just the following five purported allegations repeated throughout the Complaint:

1. The Individual Defendants paid themselves excessive compensation [Complaint, ¶¶ 68-151, 371-383, 523-609];
2. The Individual Defendants misappropriated a corporate asset by forming a separate company, Uniquad, Inc. ("Uniquad"), to purchase and own real estate which was then leased to SSM for use as its corporate headquarters [Complaint, ¶¶ 261-286, 372-434, 463-609];
3. The Individual Defendants utilized a merger procedure permitted by the Pennsylvania Business Corporation Law that resulted in Plaintiff losing her status as a shareholder of SSM [Complaint, ¶¶ 311-338, 588-609];
4. In 2000, the Individual Defendants misrepresented the value of SSM to shareholders during a campaign to repurchase stock [Complaint, ¶¶ 166-184, 463-521, 488-609];
5. The Individual Defendants failed to disclose to shareholders that, at times, SSM has been a defendant in lawsuits [Complaint, ¶¶ 288-309, 588-609].

### D.  Plaintiff's Purported "Direct" Claims.

Plaintiff contends that the claims asserted in Counts V, VI, and XIV are asserted directly on her own behalf and not on behalf of SSM. In Count V, Plaintiff asserts a claim against the Individual Defendants in their capacity as majority shareholders and claims they breached their fiduciary duty to her as minority shareholder by exercising their statutory rights under Pennsylvania law to cash her and the other minority shareholders out of SSM for $11.03 per share. [Complaint, ¶¶ 435-453]. In Count VI, Plaintiff asserts a claim under the Pennsylvania Securities Act of 1972, 70 P.S. § 1-101 et seq., (the "PSA") for fraud in connection with the purported "purchase" of her shares as a result of the Merger. [Complaint, ¶¶ 454-461]. Finally, in Count XIV, Plaintiff asserts a RICO claim against the Individual Defendants, relying on precisely the same allegations in this claim as she does for her derivative claims. [Complaint, ¶¶ 587-609].

### 1.  Count V- Breach of Fiduciary Duty

Plaintiff contends that the Individual Defendants breached their fiduciary duty as majority shareholders to plaintiff as a minority shareholder in connection with the Merger in two ways. First, she contends that the sole purpose of the Merger was to permit the Individual Defendants to continue SSM for their own benefit. [Complaint, ¶ 337]. Yet, Plaintiff acknowledges in other places throughout the Complaint at least two other reasons for the Merger: (1) to protect SSM from protracted and expensive litigation and (2) to eliminate Plaintiff (but not any other minority shareholder) as a shareholder. [Complaint, ¶¶ 336, 443]. Second, she claims that the price per share offered as a result of the Merger is unfair. [Complaint, ¶ 446].

This Count seeks alternative relief. On the one hand, Plaintiff seeks a declaration from the Court that the Merger is void and she is reinstated as a shareholder of SSM as of October 24, 2008. [Complaint, Count V]. On the other hand, recognizing she lacks the legal support to void the Merger, and although not calling it such, she improperly seeks to assert her

dissenters rights in this action by asking the Court to declare that the price offered by SSM for her shares of $11.03 is inadequate. [Complaint, Count V]. As set forth above, the dissenters' rights action is already pending.

      2.  Count VI-Claim under the PSA

Count VI is Plaintiff's second purported direct action and is asserted under the PSA. [Complaint, Count VI]. In this action, Plaintiff contends the Individual Defendants violated the PSA by misrepresenting or omitting material facts in the Merger Packet, which constituted misrepresentations and omissions in connection with the purchase of securities. Specifically, Plaintiff alleges that the Merger Packet contains the following untrue statements or material omissions of fact:

- the financial statements included in the Merger Packet fail to take into account the allegedly excessive compensation paid to the Individual Defendants [Complaint, ¶¶ 459-460];
- the calculation of the Merger consideration offered does not represent the full and fair value of the shares [Complaint, ¶¶ 459-460];
- The Merger Packet failed to state there was no independent business reason for the Merger other than to eliminate her as a shareholder [Complaint, ¶¶ 459-460];
- Plaintiff had been threatening for more than 20 months to bring a derivative action [Complaint, ¶¶ 459-460, Exh. J];
- SSM was a party to certain litigation [Complaint, ¶¶ 459-460]; and
- The Individual Defendants were the owners of Uniquad, which owns the building rented to SSM for use as its corporate headquarters [Complaint, ¶¶ 459-460].

Notably, each of the "facts" Plaintiff alleges were misstated or omitted in the Merger Packet are "facts" she concedes she was aware of prior to receiving the Merger Packet and forms the basis for the derivative action she threatened to file more than 20 months ago but failed to follow through with until she was no longer a shareholder of SSM. [Complaint, Exh. J]. For example, Plaintiff dedicates more than 200 repetitive paragraphs in the Complaint to allegations regarding the Individual Defendants' ownership of Uniquad and its connection with

6

SSM and more than 150 repetitive paragraphs regarding the alleged excessive compensation paid to the Individual Defendants, "facts" she admits she learned by reviewing the SSM documents she received in response to her demand for books and records throughout 2007. [Complaint, ¶¶ 185-259]. Because Plaintiff concedes she has been aware of these "facts" for years, she does not and cannot allege *she* was misled with respect to the Merger Packet. Moreover, the Complaint makes clear that SSM's "purchase" of her shares was not the result of her decision to sell in reliance on misrepresentations or omissions but the result of a statutory merger over which she had no control. [Complaint, ¶¶ 310-338].

### 3. Count XIV –RICO Claims

To make sure that the kitchen sink was not left out, the final Count in Plaintiff's Complaint alleges a violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq. [Complaint, Count VI]. Although Plaintiff purports to assert this as a direct action, the allegations upon which she relies for this claim are the same five allegations she asserts for the claims she is asserting derivatively. [Complaint, Count XIV]. Indeed, Plaintiff expressly references and incorporates the derivative claims into her RICO Count. [Complaint, ¶ 592, 600]. Thus, Plaintiff's RICO claim is predicated upon the Court allowing Plaintiff to assert harm she alleges was suffered by SSM in the first instance as harm suffered by her directly.

### III. ARGUMENT

**A. Legal Standard.**

A complaint must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1974, 167 L. Ed. 2d 929 (May 21, 2007) (rejecting "no set of facts"

7

language set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "Factual allegations must be enough to raise a right to relief above the speculative level." 127 S.Ct. at 1965. Moreover, a plaintiff's pleading obligation requires more than mere labels and conclusions. *Id.* at 1964-65. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65. "[A] complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 1969. Thus, in order to survive a motion to dismiss, the plaintiff must have "nudged [his] claims across the line from conceivable to plausible." *Id.* at 1974.

  **B. Plaintiff Lacks Standing To Assert The Derivative Claims In Counts I, II, III, IV, VII, VIII, IX, X, XI, XII, And XIII Because She Was Not A Shareholder Of SSM When The Complaint Was Filed.**

   Eleven of the fourteen Counts in Plaintiff's Complaint are derivative claims she brings on behalf of SSM. Each of these Counts must be dismissed, however, because plaintiff concedes she is a *former* SSM shareholder and was not a shareholder at the time she filed her Complaint, which is required under both the Pennsylvania and Federal Rules of Civil Procedure. [Complaint, ¶¶ 3, 20-22, 335, 446]. As a matter of law, therefore, she lacks standing to bring derivative claims, and Counts I, II, III, IV, VII, VIII, IX, X, XI, XII, and XIII must be dismissed.

   In order to have standing to bring a derivative action, Pa. R.Civ.P. 1506(a)(1) explicitly requires a plaintiff to allege that "each plaintiff is a stockholder or owner of an interest in the corporation or other entity." [PA. R. CIV. P. 1506(a)(1)]. This provision is in accord with FED. R. CIV. P. 23.1, which also requires a plaintiff to allege she was a stockholder at the time she filed suit to adequately plead a derivative claim.

8

Not only has Plaintiff failed to allege she was a stockholder of SSM when she filed her Complaint, she concedes that she was not. Notably, in paragraph 3 of the Complaint, Plaintiff alleges that "at all times material to the acts complained of herein," she was a shareholder of SSM. She does not similarly allege that she was a shareholder as of the date the Complaint was filed. Instead, she explains how she ceased being a shareholder of SSM on October 24, 2008, more than a month before filing her Complaint on November 25, 2008, due to a statutory merger in accordance with the Pennsylvania Business Corporation Law. [Complaint, ¶¶ 20, 334, 335, 336]. Recognizing she is no longer a shareholder of SSM, and was not one on the date the Complaint was filed, she refers to herself throughout the Complaint as a "former" shareholder, and in Count V of the Complaint, she requests in her prayer for relief that the Court reinstate as shareholders of SSM "all of the Corporation's shareholders who lost their status as shareholders" as a result of the statutory merger, including her. [Complaint, ¶¶ 21, 22, 446, Count V].

Plaintiff's reliance on *Drain v. Covenant Life Ins. Co.*, 685 A.2d 119, 454 Pa. Super. 143 (Pa. Super. Ct. 1996) and *Liss v. Liss*, 2002 Phila. Ct. Com. Pl. LEXIS 89 (Mar. 22, 2002) to argue standing is misplaced. [Complaint, ¶ 11]. *Drain* provides no guidance here because that case involved policyholders in a mutual insurance company that filed their derivative action *prior* to the merger that determined they were no longer policyholders. 685 A.2d at 121. In that case, the court was asked to determine whether a policyholder who files a derivative action and then *subsequently* loses his or her status as a policyholder through a merger also loses standing to continue to pursue the derivative action. *Id.* The court determined that Pennsylvania Rule of Civil Procedure 1506 requires only that the plaintiff be a shareholder at the time the suit is filed and at the time of the events alleged in the complaint, but does not similarly

9

require the shareholder remain one throughout the litigation. *Id.* at 124-125. Here, as set forth above, Plaintiff does not and cannot allege she was a shareholder at the time she filed the Complaint because the Merger that removed her as a shareholder occurred a month prior to the filing of the Complaint.

The *Liss* case also fails to create an argument for standing here for a number of reasons. First, the plaintiff in *Liss* was a shareholder at the time the complaint was filed. 2002 Phila. Ct. Com. Pl. LEXIS 89. Second, the *Liss* Court determined that the plaintiff's claims were direct claims brought in his capacity as a shareholder against the only other shareholder and president of the company and not derivative claims brought on behalf of the company against the company's directors. *Id.* The corporation at issue in *Liss*, unlike SSM, contained only two shareholders, each owning 50% of the shares. *Id.*

Defendants anticipate that Plaintiff intends to argue for the application of the dicta discussion in *Liss* regarding the limited circumstances in which the Philadelphia Court of Common Pleas has allowed shareholders to bring derivative claims directly. This discussion, even if not dicta from a state court of common pleas, would be inapplicable here. First, Plaintiff is not seeking to bring derivative claims directly. Counts I, II, III, IV, VII, VIII, IX, X, XI, XII, and XIII of the Complaint are alleged as derivative claims and the relief requested, if granted, benefits SSM and not Plaintiff individually. Second, and most significant, critical to the *Liss* Court's determination that if it had not already determined plaintiff's claims were direct, it might have allowed plaintiff to bring derivative claims directly, was the fact that the corporation had only two shareholders, each with a 50% interest. Plaintiff concedes these are not the facts in this case and instead alleges that prior to the Merger, SSM had at least 25 shareholders, and currently has seven shareholders. [Complaint, ¶ 25].

10

In sum, Pennsylvania Rule of Civil Procedure 1506 and Federal Rule of Civil Procedure 23.1 make clear that ownership of stock at the time of the filing of the derivative action is an absolute requirement. Plaintiff concedes in her Complaint that she was no longer a shareholder of SSM at the time she filed the Complaint and thus no longer has standing to bring the derivative claims in Counts I, II, III, IV, VII, VIII, IX, X, XI, XII, and XIII of the Complaint. As such, those Counts should be dismissed with prejudice.

### C. Plaintiff Lacks Standing To Assert The RICO Claim In Count XIV Of The Complaint Because She Has Not Alleged A Direct Injury To Her Property And Instead Bases Her Claim On Derivative Harm.

To have standing under civil RICO, a plaintiff must allege that it suffered an injury to its business or property interest "by reason of a violation of section 1962...." 18 U.S.C. § 1964(c). The "by reason of" provision means the complaint must allege that the defendant's RICO violation proximately caused injury to the plaintiff's business or property. *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 274, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) (RICO liability attaches only for harm proximately caused by RICO violation); *Anderson v. Ayling*, 396 F.3d 265, 267 (3d Cir. 2005) (plaintiff has standing only for racketeering acts proximately causing harm).

Indirect or derivative harm to a shareholder plaintiff does not confer RICO standing. *Penn Mont Sec. v. Frucher*, 502 F. Supp.2d 443 (E.D. Pa. 2007). Thus, it is only when a shareholder can establish individual injury, separate and apart from the injury to the corporation, that the shareholder can bring suit as an individual. *Gintowt v. TL Ventures*, 2004 WL 1656606 (E.D. Pa. July 22, 2004). Whether a claim is individual or derivative is determined from the body of the complaint rather than from the labels employed by the parties. *In re Sunrise Sec. Litig. v. Jacoby*, 916 F.2d 874 (3d Cir. 1990); *Penn Mont*, 502 F.Supp.2d at 459

11

("[a] Court must make an independent determination as to whether a plaintiff's claim is direct or derivative").

The *Penn Mont* case explains why Plaintiff has no RICO standing here. Plaintiff in *Penn Mont* was a seat holder on the Philadelphia Stock Exchange ("PHLX"), a mutual company. 502 F. Supp.2d at 446. Following demutualization and the alleged dilution of Penn Mont's ownership interest in PHLX, it initiated several actions against PHLX and its directors, initially in state court (all of which were dismissed) and then finally in federal court alleging various RICO violations. *Id.* at 447-448. In its RICO complaint, plaintiff alleged many of the same wrongdoings as Plaintiff alleges here, such as excessive compensation, corporate waste, misinformation regarding use of corporate assets, and that the demutualization efforts were aimed at maximizing the interest of directors and resulted in lost revenue to plaintiff. *Id.* at 448-452.

In its complaint, plaintiff asserted its various claims as direct actions. But, the court determined all of plaintiff's claims were derivative and not direct. *Id.* at 463-465. For example, the court determined corporate waste claims, such as those alleging excessive compensation and depleting corporate resources, are "classic" derivative harm. *Id.* Likewise, the court found that allegations of share dilution and mismanagement are also derivative harms and not direct to plaintiff. *Id.*

Finding Penn Mont's claims were derivative, the court turned to the proximate cause analysis for RICO standing. Using plaintiff's share dilution claim as its example, the court noted that dilution is harm first to the corporation, then subsequently an injury to Penn Mont. 502 F. Supp.2d at 466-468. This necessary middle step between the violation and any harm to Penn Mont, namely, the injury to the corporation, precluded a finding of proximate causation

12

because the harm was too attenuated. *Id.* The court thus found that the secondary injury to a shareholder fails to satisfy the proximate cause requirement under RICO, and it dismissed the RICO claims with prejudice. *Id.*

Here, Plaintiff's Complaint makes clear that her RICO claim is based on the same allegations as those set forth in Plaintiff's derivative claims in Counts I, II, III, IV, VII, VIII, IX, X, XI, XII, and XIII. According to Count XIV, the five alleged activities that plaintiff repeats as mantra throughout the Complaint as breaching the Individual Defendants' duties to SSM and causing harm to the corporation are the same five activities upon which she relies for her RICO claim and allegations of direct harm to her. Thus, contrary to the label Plaintiff puts on her RICO claim, it is undeniably a derivative action. Because the alleged harms are derivative, the initial injury (if any) is to SSM, making any subsequent injury to Plaintiff too attenuated to establish probable cause and destroying her standing for a RICO claim.

### D. Count V Fails Because Plaintiff Has Not Alleged Any Breach By The Individual Defendants Of Their Limited Fiduciary Duty As Majority Shareholders.

In Count V, Plaintiff asserts a direct action for breach of a fiduciary duty owed her as a minority shareholder by the Individual Defendants as majority shareholders in connection with the Merger. This claim is a blatant effort to circumvent the Pennsylvania Business Corporation Law's clear pronouncement that the exclusive remedy for a former shareholder unhappy with a statutory merger is the exercise of dissenters' rights to determine the fair value of the shares.

The statutory merger is a well-recognized technique for a corporation to rid itself of troublesome minority shareholders as long as the majority has a business rationale beyond benefitting themselves. *Zen Investments, LLC v. Unbreakable Lock Co.*, 2006 WL 1582333, at *4 (E.D. Pa. June 2, 2006). Majority shareholders only violate the limited fiduciary duty

13

imposed on them in the merger context to minority shareholders when they cash out the minority for the sole purpose of continuing the business for the benefit of the majority. *Id.* Here, although Plaintiff makes the conclusory allegation that the sole purpose of the Merger was continuing the business for the benefit of the majority, she also alleges at least two other reasons for the Merger. First, she alleges the Merger was actually for the purpose of protecting SSM from the expense and burden of litigation. [Complaint, ¶ 336]. Second, she alleges the purpose of the Merger was to remove her specifically as a shareholder and not to remove the minority shareholders generally. [Complaint, ¶ 443]. On its face, therefore, the Complaint fails to allege a breach of the majority's fiduciary duty.

> **E. Count VI For Breach Of The PSA Fails Because Plaintiff Does Not And Cannot Allege (1) Any Misrepresentations Upon Which She Could Rely And (2) A Nexus Between The Alleged Material Omissions And Any Injury.**

In Count VI of the Complaint, Plaintiff alleges the Individual Defendants violated Section 1-501(b) of the PSA by making material omissions in the Merger Packet and that those omissions were made in connection with SSM's purchase of her SSM shares. Plaintiff's claim fails to satisfy at least two of the elements of a PSA fraud claim.

Section 1-401(b) of the PSA prohibits the use of any deceptive device in connection with the purchase or sale of a security. 70 P.S. § 1-401. Rule 1-401 forbids the making of any "untrue statement of a material fact" or the omission of any material fact needed to make the statements not misleading. 70 P.S. § 1-401.

The PSA, in Section 1-501(b), creates a private right of action for violation of Section 1-401 in connection with the purchase of securities. 70 P.S. § 1-501(b). A valid securities fraud claim under Sections 1-401 and 1-501(b) requires allegations that: (1) defendants made misstatements or omissions of material fact; (2) with scienter; (3) in connection with a purchase or sale of securities; (4) upon which plaintiffs relied; and (5) plaintiffs' reliance was the

14

cause of their injury.  *Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.,* 40 F. Supp.2d 644, 659 (W.D. Pa. 1999); *Goodman v. Moyer,* 523 F. Supp. 35, 39 (E.D. Pa. 1981).

Here, Plaintiff cannot satisfy the fourth or fifth element of this claim.  First, Plaintiff cannot allege she took any action in reliance on the allegedly false statements in the Merger Packet because she concedes she was well aware of each of the supposed "facts" that were omitted from the Merger Packet prior to receiving it.  Plaintiff cites six omitted "facts": (1) the Individual Defendants received excessive compensation; (2) the only purpose for the Merger was to remove her as a shareholder; (3) Plaintiff threatened for more than 20 months to bring a derivative action; (4) the relationship between the Individual Defendants and Uniquad; (5) SSM has, over time, been involved in other lawsuits; and (6) the compensation paid for the shares was not fair.  As to items one, four and five, Plaintiff's 145-page Complaint makes clear that based on the extensive books and records she obtained from SSM over the past two years, Plaintiff was aware of these "facts" prior to the Merger.  Indeed, Plaintiff concedes she has considered filing a derivative action based on them since at least March, 2007, or 20 months before the Merger.  [Complaint, Exh. J].  As to items two, three and six, those "facts" are uniquely within Plaintiff's knowledge or imagination.  Because Plaintiff was already aware of the "facts" alleged omitted from the Merger Packet prior to receiving it, there were no material misrepresentation or omissions upon which she could rely, which is fatal to her PSA claim.

Equally fatal to Plaintiff's PSA claim is her inability to satisfy the final element. This element requires a causal nexus between the shareholder's reliance and injury. Courts have concluded that this nexus is not met in the context of a merger where the majority shareholders hold more than 80% of the shares and the minority has no input into the fate of the corporation or its individual shares.  *Scattergood v. Perelman*, 945 F.2d 618 (3d Cir. 1991).

15

In *Scattergood*, like here, a shareholder who owned 57% of a company's stock moved to cash out the remaining shareholders in a merger. 945 F.2d at 623. A minority shareholder complained that the notices provided to the shareholders concerning the merger contained material misstatements and omissions. *Id.* at 621. The Court held that where the vote of the majority shareholder was legally sufficient to effect the merger, and thus no other shareholder could affect the result of the voting, a minority shareholder cannot prove causation under § 10b-5 of the federal security act (the federal equivalent to section 1-401 of PSA) and therefore could not recover under that section on the basis of misleading statements in connection with the purchase or sale of securities. Id. at 624-626; see also *Santa Fe v. Green*, 430 U.S. 462, 97 S. Ct. 1292, 51 L. Ed.2d 480 (1977) (holding when a majority shareholder of a company pursues a cash-out merger, the chain of causation between a pre-merger misrepresentation and the price received under the merger is broken).

The same is true here. Plaintiff concedes that the Individual Defendants and their spouses owned 89.06% of the shares of SSM at the time of the Merger. Under those circumstances, Plaintiff could do nothing to change the course of events or prevent the Merger. Thus, there is no nexus between the Merger Packet (which, as set forth above contains no misrepresentations upon which Plaintiff relied) and her loss of status as a shareholder of SSM for a price of $11.03 per share.

Stated another way, Plaintiff was divested of her shares of SSM through a lawful merger she had no say in and no notice of until it was completed. Thus, she cannot allege she took any action whatsoever in reliance on the Merger Packet and her PSA claim fails.

## IV. CONCLUSION

        For the foregoing reasons, Defendants request that Plaintiff's Complaint be dismissed with prejudice.

                                      STEVENS & LEE

Dated: January 5, 2009                By:  *s/Stacey A. Scrivani*
                                                      G. Thompson Bell, III
                                                        Attorney I.D. No. PA 32649
                                                        Stacey A. Scrivani
                                                         Attorney I.D. No. PA 84275
                                                         111 N. Sixth Street
                                                         P.O. Box 679
                                                         Reading, Pennsylvania 19603-0679
                                                         (610) 478-2000

                                            Attorneys for Defendants